```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF PUERTO RICO
```

|  |  |
|---|---|
| MADELINE RODRÍGUEZ-ÁLVAREZ, | |
| Plaintiff, | |
| v. | CIVIL ACTION<br>NO. 14-01924-WGY |
| MUNICIPALITY OF JUANA DÍAZ,<br>RAMÓN A. HERNÁNDEZ-TORRES,<br>OSCAR NAZARIO-SEGARRA, LOURDES<br>ENCARNACIÓN, and JESSICA<br>SANTIAGO-BURGOS, | |
| Defendants. | |

YOUNG, D.J.[1]                                February 17, 2017

**MEMORANDUM AND ORDER**

I.   **INTRODUCTION**

Madeline Rodríguez-Álvarez ("Rodríguez-Álvarez") filed claims against the Municipality of Juana Díaz ("Municipality") and various officers of the Municipality (collectively, "the Defendants") for discrimination on the basis of her Human Immunodeficiency Virus ("HIV") positive diagnosis under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12112, and the Puerto Rico disability discrimination and general tort statutes, 1 P.R. Laws Ann. §§ 501-11; 31 P.R. Laws Ann. §§ 5141-

---

[1] Of the District of Massachusetts, sitting by designation.

42. At a hearing on October 26, 2016, this Court granted summary judgment for the Defendants on Rodríguez-Álvarez's state law claims and took the ADA claim under advisement. Electronic Clerk's Notes, ECF No. 41. The Court now DENIES the Defendants' motion for summary judgment on the grounds that Rodríguez-Álvarez is a qualified individual under the ADA and that she has raised a triable issue on her hostile work environment claim.

**A. Facts Alleged**

Rodríguez-Álvarez was employed by the Municipality as a "Worker" between January 29, 2001 and July 22, 2015, first in a temporary capacity, then later as a career employee. Statement Uncontested Material Facts ("SUMF") ¶¶ 1-2, ECF No. 29-1. Rodríguez-Álvarez was transferred to the Department of Conservation and Recreation on July 1, 2012. Id. ¶ 3. The Municipality is a municipal organization with offices in the city of Juana Díaz, Puerto Rico. Am. Compl. ¶ 2, ECF No. 18. The defendant Ramon A. Hernández Torres is the mayor of Juana Díaz. Id. ¶ 3. The defendant Oscar Nazario Segarra is the Director of Conservation. Id. ¶ 4. The defendant Lourdes Encarnación is a part time employee for the Municipality. Id. ¶ 5. Finally, the defendant Jessica Santiago Burgos is the Director of Human Resources. Id. ¶ 6.

Rodríguez-Álvarez was diagnosed as HIV positive on August 19, 2013, and informed her supervisor of her condition the same

day.  SUMF ¶ 5.  After learning of Rodríguez-Álvarez's diagnosis, the Defendants closed the bathroom and kitchenette within the department to every employee, id. ¶¶ 16-17, 20-22, which forced Rodríguez-Álvarez to walk five to ten minutes to bathrooms on the other side of the coliseum, Resp. Mot. Summ. J. & Mem. Supp., Ex. A, Dep. Madeline Rodríguez-Álvarez ("Rodríguez-Álvarez Dep.") 35:9-13, ECF No. 33-2.  Rodríguez-Álvarez testified that this required her to urinate in the hallways.  Id. at 20:5-11, 34:4-20.  After she disclosed her HIV diagnosis, the Defendants also changed Rodríguez-Álvarez's shift from the 5AM to the 6PM shift, id. at 25:4-12, 47:10-16, relieved her of all of her previous duties, and forced her to sit at her desk with nothing to do, id. at 49:15-50:9.  Furthermore, the Defendants stopped inviting Rodríguez-Álvarez to social gatherings after her HIV diagnosis became public, despite the fact that she had been invited to such gatherings for the past thirteen years.  Id. at 62:25-63:13, 72:22-73:25.  Rodríguez-Álvarez resigned from her position on July 22, 2015.  SUMF ¶ 4.

**B. Procedural History**

Rodríguez-Álvarez brought suit against the Defendants and an unknown insurance company on December 29, 2014.  Compl., ECF No. 1.  She filed an amended complaint on August 4, 2015, dropping the insurance company as a defendant.  Am. Compl. ¶¶ 1-

6. The Defendants filed an answer on August 19, 2015. Answer Am. Compl., ECF No. 20. The parties submitted a proposed pretrial order on December 16, 2015. Joint Proposed Pre Trial Order, ECF No. 26. The Defendants then filed a motion for summary judgment on January 22, 2016, Mot. Summ. J. & Br. Supp. ("Defs.' Br."), ECF No. 29, and the parties fully briefed the issues, Resp. Mot. Summ. J. Mem. Supp. ("Pl.'s Resp."), ECF No. 33; Reply Pl.'s Opp'n Defs.' Summ. J. Mot., ECF No. 37. This Court heard arguments on October 26, 2016 and took the ADA claim under advisement, allowing Rodríguez-Álvarez leave to file medical records. Electronic Clerk's Notes, ECF No. 41. Rodríguez-Álvarez submitted a certified copy of her medical records on November 11, 2016. Mot. Compliance, Ex. 1 ("Medical Records"), ECF No. 43-1.

## II. DISCUSSION

### A. Legal Standard

"A moving party is to be spared a trial when there is no genuine issue of any material fact on the record and that party is entitled to judgment as a matter of law." Murray v. Warren Pumps, LLC, 821 F.3d 77, 83 (1st Cir. 2016) (citing Fed. R. Civ. P. 56(c)). Summary judgment may be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). The court considers the facts "in the light most favorable to the nonmoving party and give[s] that party the benefit of all reasonable inferences in its favor." Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006). The nonmoving party "must demonstrate, through submissions of evidentiary quality, that a trialworthy issue persists." DePoutot v. Raffaelly, 424 F.3d 112, 117 (1st Cir. 2005) (citations omitted).

### B. Qualified Individual

In Bragdon v. Abbott, 524 U.S. 624, 631 (1998), the Supreme Court applied a three-part test to determine whether an HIV infection qualifies as a disability under the ADA. Holding that the individual's HIV infection constituted a disability under 42 U.S.C. § 12102(2)(A), the Supreme Court stated:

> First, we consider whether respondent's HIV infection was a physical impairment. Second, we identify the life activity upon which respondent relies . . . and determine whether it constitutes a major life activity under the ADA. Third, tying the two statutory phrases together, we ask whether the impairment substantially limited the major life activity.

Bragdon, 524 U.S. at 631; see also Ramos-Echevarria v. Pichis, Inc., 659 F.3d 182, 187 (1st Cir. 2011).

In this case, the first two prongs are clearly established. First, Bragdon provides that HIV qualifies as an impairment from the moment of infection, Bragdon, 524 U.S. at 637, and it is

[5]

undisputed that Rodríguez-Álvarez was diagnosed as HIV positive on August 19, 2013, SUMF ¶ 5. Second, Rodríguez-Álvarez's immune deficiency falls within the ADA's enumerated major life activities, which include "major bodily functions" such as the "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." 42 U.S.C. § 12102(2)(B).

The parties, however, dispute the standard for proving the third element, which requires Rodríguez-Álvarez to show that her HIV positive condition "substantially limited" her immune system function, Bragdon, 524 U.S. at 631. Prior to 2008, case law prescribed an individualized assessment on the third prong, taking into consideration the particular characteristics of the plaintiff and the claimed impairment. See Gelabert-Ladenheim v. American Airlines, Inc., 252 F.3d 54, 59 (1st Cir. 2001) (describing disability analysis under the ADA as an "individualized inquiry"). Courts in this district previously required that a plaintiff seeking protection under the ADA provide objective medical evidence to satisfy the substantial impairment requirement. See, e.g., Machin-Rodriguez v. C&C P'ship Coca Cola P.R., No. Civ. 03-1746 SEC, 2005 WL 2293574, at *4 (D.P.R. Sept. 20, 2005) (Casellas, J.) (ruling failure to show substantial limitation where medical records were

[6]

"completely devoid of any reference as to the effect that Plaintiff's depression has had, if any, on his major life activities as required by the ADA"); Cruz Carrillo v. AMR Eagle, 148 F. Supp. 2d 142, 145 (D.P.R. 2001) (Laffitte, C.J.) (ruling that plaintiff did not meet burden on third element where he "failed to introduce into evidence any medical evidence from which a reasonable jury could find that HIV substantially limits a man's ability to reproduce").[2] Congress subsequently passed the ADA Amendments Act of 2008 ("ADAAA"), which broadened the protections of the ADA. ADA Amendments Act, Pub. L. 110-325, 122 Stat. 3553 (2008) (setting out among the ADA's purposes "to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis"). The ADAAA reflected Congress's express intent to lower the threshold for determining when an individual qualifies as disabled under the meaning of the ADA, stating that "the current Equal Employment Opportunity Commission ADA regulations defining the term 'substantially limits' as 'significantly restricted' are inconsistent with congressional intent, by

---

[2] See also Poh v. Massachusetts Corr. Officers Federated Union, 2006 WL 1877089, at *2 (D. Mass. July 7, 2006) (Zobel, J.) (failing to establish third element where "plaintiff has provided no evidence -- beyond his own affidavit -- that demonstrates the effect that his physical impairment has had on his major life activities").

[7]

expressing too high a standard."[3] Id. The extent to which the 2008 Amendments changed the law, however, remains unclear in the absence of case law interpreting the ADAAA. Therefore, this analysis begins with a brief overview of post-ADAAA cases.

To begin, courts applying the post-ADAAA standard have not abandoned the individualized Bragdon analysis. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 33 (1st Cir. 2010) (engaging in "fact-intensive and individualized" inquiry on issue of substantial limitation (internal quotation marks and citations omitted)); Garcia-Hicks v. Vocational Rehab. Admin., 148 F. Supp. 3d 157, 166-67 (D.P.R. 2015) (Besosa, J.) (citing examples of courts applying new ADAAA standard for threshold disability inquiry). Rodríguez-Álvarez relies heavily on Horgan v. Simmons, 704 F. Supp. 2d 814, 819-20 (N.D. Ill. 2010), as support for the general proposition that the ADAAA significantly limits the "qualified individual" inquiry. Pl.'s Resp. 6-7. The Horgan court stated that congressional intent as well as the then proposed regulations by the Equal Employment Opportunity Commission ("EEOC") justified a low pleading standard. 704 F.

---

[3] As the court observed in Garcia-Hicks v. Vocational Rehabilitation Administration, 148 F. Supp. 3d 157, 163 (D.P.R. 2015) (Besosa, J.), recent First Circuit cases have not "appl[ied] the post-ADAAA standard of 'substantially limits' because the events giving rise to the litigation in these cases occurred prior to January 1, 2009, the effective date of the ADAAA." The summary judgment threshold is particularly unclear, as few courts have expatiated on the post-ADAAA standard.

Supp. 2d at 818-19. Horgan, however, was decided on a motion to dismiss, and in fact distinguished a pre-ADAAA case from the Seventh Circuit, Equal Emp't Opportunity Comm'n v. Lee's Log Cabin, Inc., 546 F.3d 438 (7th Cir. 2008), that was decided on a motion for summary judgment. Horgan, 704 F. Supp. 2d at 819-20. Lee's Log Cabin granted summary judgment on the ground that the plaintiff "had not produced evidence that being HIV-positive substantially limited one or more of Stewart's major life activities as required to satisfy the ADA's definition of 'disability.'" Lee's Log Cabin, Inc., 546 F.3d at 440. Although Lee's Log Cabin was a pre-ADAAA case, other post-ADAAA summary judgment decisions continue similarly to require that plaintiffs put forth objective medical evidence on the substantial limitation prong, see, e.g., Ramos-Echevarria, 659 F.3d at 187. In one instance, a court concluded that where the plaintiff's medical records did not simply contain a diagnosis, but also revealed that "Molina's symptoms included 'sharp lumbar pain,' 'lateral pelvic sharp burning pain,' and 'right leg sharp pain along the anterior thigh with a dull pressure on the posterior and lateral thigh as well as some numbness and tingling along the plantar aspect of the foot,'" a reasonable jury could find that a plaintiff was disabled. Molina v. DSI Renal, Inc., 840 F. Supp. 2d 984, 994 (W.D. Tex. 2012). Indeed, the First Circuit in a post-ADAAA case stated that "[e]vidence

[9]

of a medical diagnosis of impairment, standing alone, is insufficient to prove a disability," but rather "[w]hat is required is evidence showing that the impairment limits this particular plaintiff to a substantial extent." Ramos-Echevarria, 659 F.3d at 187 (internal quotation marks and citations omitted). The Defendants argue that Rodríguez-Álvarez's claim does not survive summary judgment under the established individualized inquiry. Defs.' Br. 7-8. Undoubtedly, if the law is understood to require medical evidence establishing the causal link between Rodríguez-Álvarez's HIV status and her stated symptoms, her own testimony regarding her symptoms would likely be insufficient to survive summary judgment.

The issue before this Court, therefore, is whether HIV is a special type of impairment that is subject to a different standard.[4] The EEOC has since provided further guidance on the disability standard in its Regulations to Implement the Equal Employment Provisions of the Americans with Disabilities Act

---

[4] Rodríguez-Álvarez states in her brief that "she testified that she had developed a mild degree of AIDS" and "how her condition of AIDS had affected her immunological system causing a very low level of CD4 cells meeting the criteria of an impairment that substantially limits a major life activity." Pl.'s Resp. 7. There is simply no evidence in the record to support Rodríguez-Álvarez's claim that she has AIDS. Therefore, this analysis assumes only that she is HIV positive, as indicated by her doctor's notes.

[10]

("EEOC Regulations"), 29 C.F.R. pt. 1630. The EEOC Regulations state:

> The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Accordingly, <u>the threshold issue of whether an impairment "substantially limits" a major life activity should not demand extensive analysis</u>.

29 C.F.R. § 1630.2(j)(1)(iii) (emphasis added). Specifically, the EEOC Regulations include "Human Immunodeficiency Virus (HIV) infection [which] substantially limits immune function" within a list of impairments that will "easily be concluded . . . substantially [to] limit the major life activities indicated." <u>Id.</u> § 1630.2(j)(3)(iii). Rodríguez-Álvarez seemingly invites this court to interpret the EEOC's list effectively as <u>per se</u> disabilities, an approach taken by a minority of courts. These courts, though not using <u>per se</u> language, have interpreted the post-ADAAA standard as lowering the bar so far as to eliminate it altogether. <u>See, e.g.</u>, <u>Roggenbach v. Touro Coll. of Osteopathic Med.</u>, 7 F. Supp. 3d 338, 344 (S.D.N.Y. 2014) (deeming plaintiff's failure to "demonstrate that his HIV-positive status has inhibited a major life activity" as "not fatal to Plaintiff's claim"); <u>Horgan</u>, 704 F. Supp. 2d at 819-20; <u>Doe</u> v. <u>Deer Mountain Day Camp, Inc.</u>, 682 F. Supp. 2d 324, 341 (S.D.N.Y. 2010).

[11]

This case highlights the tension between the EEOC list of impairments -- which places HIV into the same category of impairments that will "easily be concluded . . . substantially [to] limit the major life activities indicated," 29 C.F.R. § 1630.2(j)(3)(iii) -- and the traditional distinction between HIV and AIDS found in the case law that is rooted in the factual differences between the two conditions, Bragdon, 524 U.S. at 633-37. Simply put, the EEOC Regulations move the ADA disability standard, in certain areas, towards a categorical approach, while many courts have continued to analyze the "substantial impairment" requirement on an individualized basis. The standard for what constitutes an ADA-protected disability falls somewhere on this spectrum. Rather than attempt to draw an arbitrary line, this Court relies on the expertise of the EEOC and defers to its well-considered regulations, which place HIV in a special category entitled to broader protection under anti-discrimination law. Such an approach also accords with Congress's intent to expand the scope of ADA protections.

In light of the post-ADAAA case law that continues to apply an individualized inquiry, this Court eschews a per se rule, but adopts a low standard for surviving summary judgment. The record reflects that Rodríguez-Álvarez was diagnosed with HIV on August 19, 2013, SUMF ¶ 5, and has been receiving treatment at the Immunology Clinic of Ponce since September 16, 2013.

Medical Records 27. Rodríguez-Álvarez indicated that her condition resulted in her suffering from vomiting, urinary incontinence, and drowsiness. Rodríguez-Álvarez Dep. 13:11-21, 20:8-20, 34:17-20, 49:22-24. She further testified that she had to be very careful in dealing with bacteria because she "could end up in a hospital," id. at 27:2-6, 77:3-10, and that she took six months of sick leave after her diagnosis, id. at 83:6-11. Finally, the plaintiff's medical records -- a series of "progress notes" that track Rodríguez-Álvarez's HIV treatment -- show that she received regular treatment for HIV from September 16, 2013 through October 24, 2016. Medical Records 2-27. Based on the available evidence, a rational factfinder could reasonably conclude that Rodríguez-Álvarez's HIV-positive status substantially limits her immune system function.

Although Rodríguez-Álvarez's case survives summary judgment, it does so by the thinnest of margins. Rodríguez-Álvarez's failure to introduce testimony by a medical expert on the effects of her HIV diagnosis on her symptoms, though not fatal at this stage, will severely impede her chances of success at trial. Because the EEOC grants the impairment of HIV a special status, however, this Court holds that the determination of whether HIV substantially impairs Rodríguez-Álvarez's immune system function is subject to a particularly low bar under the

[13]

ADAAA.  As a result, Rodríguez-Álvarez's claim survives summary judgment on the threshold qualified individual issue.

### C. Hostile Work Environment[5]

Rodríguez-Álvarez claims that the Defendants "recklessly created a hostile work environment with their discriminatory intimidation, ridicule and insult to a degree so severe and pervasive that it resulted in an abusive work environment." Pl.'s Resp. 3.  The First Circuit has stated that in order to establish a hostile work environment, "a plaintiff must show that her workplace was 'permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [her] employment and create an abusive working environment.'" Colon-Fontanez v. Municipality of San Juan, 660 F.3d 17, 43 (1st Cir. 2011) (internal quotation marks and citations omitted).  The Supreme Court has further held that "whether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." Harris v. Forklift Sys., Inc., 510 U.S. 17,

---

[5] Although there is overlap, Rodríguez-Álvarez uses both the terms "harassment" and "hostile work environment" to describe her claims. Compare Flowers v. Southern Reg'l Physician Servs., Inc., 247 F.3d 229, 235 (1st Cir. 2001) (discussing standard for ADA harassment claim), with Rosario v. Department of Army, 607 F.3d 241, 246 (1st Cir. 2010) (discussing standard for Title VII hostile work environment claim).  This Court assumes that Rodríguez-Álvarez intended to make a hostile work environment claim, as her claims appear to emphasize the pervasiveness and frequency of the harassment.

23 (1993). While "'there is no mathematically precise test to determine whether a plaintiff presented sufficient evidence' that she was subjected to a severely or pervasively hostile work environment," courts have examined the following relevant factors: the severity of the conduct, its frequency, and whether it unreasonably interfered with the victim's work performance. Id. at 43-45 (citations omitted).

After disclosing her HIV positive diagnosis to her employer, Rodríguez-Álvarez claims that she was subjected to a series of discriminatory acts.[6] Pl.'s Resp. 8-10. The Defendants maintain that the alleged actions were not discriminatory or did not arise to an actionable hostile work environment based on disability. Def.'s Br. 11-14. After learning of Rodríguez-Álvarez's condition, the Defendants closed the bathroom and kitchenette within the department to every employee, SUMF ¶¶ 16-17, 20-22, which forced Rodríguez-Álvarez to walk five to ten minutes to bathrooms on the other side of the coliseum, id. ¶ 16. Rodríguez-Álvarez testified that this

---

[6] Rodríguez-Álvarez also raises a theory of constructive discharge for the first time in her opposition brief. Pl.'s Resp. 3. She made no allegations in her amended complaint, however, to support the claim that the working conditions forced her to resign. The First Circuit has held that "the fact that the plaintiff endured a hostile work environment -- without more -- will not always support a finding of constructive discharge." Marrero v. Goya of P.R., Inc., 304 F.3d 7, 28 (1st Cir. 2002) (citing Landgraf v. USI Film Prods., 968 F.2d 427, 430 (5th Cir. 1992)).

required her to urinate in the hallways. Rodríguez-Álvarez Dep. 20:5-11, 34:4-20. Although the Defendants deny that this is discriminatory, arguing that Rodríguez-Álvarez admitted the bathroom was closed to all employees, Def.'s Br. 11, Rodríguez-Álvarez's testimony regarding the timing of the closure and the distinct impact the Defendants' actions had on her due to her condition could raise a reasonable inference of discriminatory treatment. Also, after Rodríguez-Álvarez disclosed her HIV diagnosis, the Defendants changed her shift from 5AM to 6PM, id. at 25:4-12, 47:10-16, relieved her of all of her previous duties, and forced her to sit at her desk with nothing to do, id. at 49:15-50:9. The Defendants' response that Rodríguez-Álvarez kept the keys to the trucks and retained her duties for a number of months, Defs.' Br. 11, ignores Rodríguez-Álvarez's basic allegation that she was stripped of her duties after her HIV positive condition became known, Rodríguez-Álvarez Dep. 49:15-50:9. Finally, the Defendants rebut the claim that Rodríguez-Álvarez was excluded from social gatherings after her HIV diagnosis became public, despite the fact that she had been invited to such gatherings for the past thirteen years, id. at 62:25-63:13, 71:22-73:25, by pointing to her testimony that she was not the only person excluded from the social gatherings, Defs.' Br. 12-13; SUMF ¶¶ 27-28, and that it was her own decision not to attend, Defs.' Br. 13; SUMF ¶ 30. This argument

[16]

fails to address the claim of discrimination by ignoring the fact that the other excluded individual was Rodríguez-Álvarez's only friend in the office, Rodríguez-Álvarez Dep. 68:6-21. On this record, a reasonable jury could find that the harassment against Rodríguez-Álvarez was sufficiently severe or pervasive to constitute a hostile environment. See Quiles-Quiles v. Henderson, 439 F.3d 1, 7-8 (1st Cir. 2006); Mendez-Vazquez v. Tribunal General De Justicia, 477 F. Supp. 2d 406, 412-13 (D.P.R. 2007) (Pieras, J.) (finding sufficient factual issues on hostile work environment claim where plaintiff was denied vacation time, docked time from his time card, and not allowed to use the handicap parking place).

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment as to the ADA claim, ECF No. 29, is DENIED.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE